**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MIA GRAVES** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 26-996** |
| | : | |
| **TRANS UNION LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and EQUIFAX INFORMATION SERVICES LLC** | : : : | |

# MEMORANDUM

**KEARNEY, J.** **September 1, 2026**

Mia Graves returns with another pro se complaint against consumer reporting agencies claiming they violated Congress's mandates in the Fair Credit Reporting Act. She continues to claim inconsistencies between differing reports demonstrate inaccuracies in the reporting. But her assertions are not the governing law. Ms. Graves also, after two attempts, cannot plead facts allowing us to plausibly infer the consumer reporting agencies violated a duty to reinvestigate a dispute where such reinvestigation would have resulted in the discovery of a discrepancy in her report or they willfully or negligently violated specific duties owed to consumers under the Fair Credit Reporting Act. Ms. Graves also does not plead facts allowing us to plausibly infer Trans Union failed to meet Congress's reinsertion mandates. We must dismiss Ms. Graves's claims with prejudice as she demonstrated she cannot amend to plead facts allowing us to plausibly infer a basis for her claims challenging line entries in her consumer reports between June 2025 and April 2026.

## I. Alleged Facts

Mia Graves obtained and reviewed several consumer reports and dispute-result documents concerning her credit information dated between June 2025 and April 2026.[1] She reviewed a June

1, 2025 three-bureau report; an October 1, 2025 three-bureau report; a November 19, 2025 three-bureau report; results from a January 2026 investigation; and an April 3, 2026 three-bureau report.[2] The three-bureau reports each reflected different credit scores for Ms. Graves.[3] The reports' summary sections also reflected tradelines and inquiries into Ms. Graves' credit history.[4] Ms. Graves identified tradelines and inquiries she believed inaccurately appeared in her credit report and disputed them with the consumer reporting agencies.[5] In certain instances, she found disputed and deleted tradeline and inquiry information later reappeared without the reinsertion notices or certifications Congress requires through the Fair Credit Reporting Act.[6]

***Ms. Graves's repeated allegations.***

Ms. Graves sued credit reporting agencies Trans Union LLC, Experian Information Solutions, Inc., and Equifax Information Services LLC alleging they violated specific obligations set by Congress in the Fair Credit Reporting Act concerning her consumer credit reports between June 2025 and April 2026.[7] We dismissed with leave to file a second amended Complaint consistent with Rule 11.[8] Ms. Graves timely amended.[9] She again alleges with the benefit of guidance from our earlier dismissal the Agencies failed to follow reasonable procedures and conduct reasonable reinvestigations to assure maximum possible accuracy of the information on her consumer credit reports as Congress requires in sections 1681e(b) and 1681i of the Fair Credit Reporting Act.[10] She again alleges the Agencies willfully and negligently failed to comply with their duties under sections 1681n and 1681o of the Act regarding her consumer credit reports.[11] She again alleges Trans Union violated section 1681i(a)(5)(B) of the Act by reinserting previously deleted information into her consumer credit reports.[12] And she also appears to allege the Agencies violated section 1681i(a)(5)(B) stemming from information concerning her First Premier Bank account deleted from an Experian credit report and then reinserted into subsequent credit reports.[13]

Ms. Graves alleges the Agencies' reporting practices damaged her creditworthiness, lowered her credit scores, increased her perceived credit risk, impaired her ability to obtain favorable credit, required her to spend time disputing the Agencies' credit reports, and caused emotional distress and other damages.[14] She seeks compensatory damages, statutory and punitive damages for her willful and negligent noncompliance claims under sections 1681n and 1681o, costs and allowable litigation expenses, pre- and post-judgment interest, and an order requiring the deletion, suppression, correction, or blocking of information she alleges is inaccurate, unverifiable, materially misleading, or unlawfully reinserted information.[15]

## II. Analysis

We begin with a primer on the nature of Ms. Graves's repeated claims. Consumer reporting agencies regularly "assembl[e] or evaluat[e] consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for compensation or on a cooperative basis.[16] These agencies issue consumer reports concerning a "consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living."[17] Consumer reports affect the consumer's eligibility for certain purposes, including personal credit, insurance, and employment.[18] Consumer reporting agencies thus play a "vital role in assembling and evaluating consumer credit and other information on consumers."[19] Congress regulates consumer reporting agencies through the Fair Credit Reporting Act to insure agencies act with "fairness, impartiality, and a respect for the consumer's right to privacy."[20]

The Agencies now jointly move to dismiss Ms. Graves' inaccuracy, willfulness, and reinsertion claims under the Fair Credit Reporting Act.[21] They argue: (1) Ms. Graves does not allege the inaccuracy in the Agencies' reporting Congress requires in sections 1681e(b) and 1681i

of the Act; (2) Ms. Graves does not (and cannot) allege facts sufficient to support a willfulness claim under section 1681n of the Act; and (3) to the extent Ms. Graves alleges Trans Union unlawfully reinserted previously deleted information into her consumer credit reports under section 1681i(a)(5)(B) of the Act, she does not allege facts to support the claim.[22] Ms. Graves responds she pleads facts permitting “the reasonable inference that each reporting Defendant may be liable.”[23] We agree with the Agencies and dismiss her claims with prejudice.

The Supreme Court through Rule 12(b)(6) requires Ms. Graves to plead “sufficient factual matter, accepted as true, ‘to state a claim to relief that is plausible on its face.’”[24] We accept as true all well-pleaded factual allegations, draw all reasonable inferences in her favor, and construe her allegations in the light most favorable to her to determine whether she plausibly states a claim for relief.[25] Our Court of Appeals directs us to construe a pro se litigant’s pleadings “liberally” and “hold [her] to ‘less stringent standards than formal pleadings drafted by lawyers.’”[26] We “remain flexible” and “apply the relevant legal principle even when the complaint has failed to name it.”[27] But “pro se litigants still must allege sufficient facts in their complaints to support a claim.”[28] They “must still ultimately ‘abide by the same rules that apply to all other litigants.’”[29]

**A. Ms. Graves again does not allege actionable inaccuracies.**

Ms. Graves again alleges the Agencies reported inaccurate, materially misleading, incomplete, or unverifiable information concerning several accounts on her consumer credit reports.[30] She alleges the following accounts on her credit reports contained inaccurate information:

- Auto Trakk Vehicle Account: after Auto Trakk repossessed Ms. Graves’ leased 2012 Jeep Compass in November 2023, Ms. Graves alleges Equifax consumer reports showed an open-installment account with a balance of approximately $8,972, recent last-reported and last-active activity, and dispute-related language.[31]

- Discover Bank Account: Ms. Graves alleges Experian reporting showed the account as charged off while also containing an account balance of approximately $1,488.[32]

- CB Indigo Account: Ms. Graves alleges Trans Union and Experian reporting showed an account balance of approximately $725 and a past-due amount of approximately $163 while also containing language concerning a resolved dispute.[33]

- Synovus / First Digital Account: Ms. Graves alleges credit reports showed an account balance, scheduled monthly payment, and record of late payments after dispute, with different information across bureaus and reporting periods.[34]

- TBOM / CCI MasterCard Account: Ms. Graves alleges credit reports showed the account as open with a balance and past-due reporting, a credit limit or original amount lower than the reported balance, and reference to previous dispute or investigation concerning the account without explaining how the disputed fields were reconciled.[35]

- TBOM / Milestone Account: Ms. Graves alleges credit reports showed an account balance of approximately $847, past-due amount of approximately $160, and late 120-day status while also containing language suggesting the dispute had been resolved, subscriber-reported, or completed.[36]

- FEB / Destiny Account: Ms. Graves alleges Equifax reporting showed the account with monthly payment of approximately $48 and balance of approximately $783 while also reflecting a resolved dispute.[37]

- MRV / Revvi Account: Ms. Graves alleges the April 3, 2026 reports from Trans Union and Equifax showed the account as derogatory or collection/charge off but the Equifax report from the same day showed the account as open.[38]

- Total Visa / BK OF MO / TBOM Account: Ms. Graves alleges earlier credit reports showed the account as open while later reports showed the account as closed, charge off/derogatory, or open late depending on bureau and report period.[39] She also alleges the account information differed across bureaus.[40]

- Westlake Financial Account: Ms. Graves alleges differences in original loan amount, monthly payment, and recent balances for the account between Experian and Trans Union reports.[41]

- Self / Atlantic Capital / Lead Bank Account: Ms. Graves alleges Experian dispute results showed the account as paid and closed. She alleges the account "appeared under related or overlapping names and identifiers…creating ambiguity regarding ownership, status, closure, and continued reporting after dispute."[42]

- Citi Cards / Citicards CBNA: Ms. Graves alleges the June 1, 2025 and April 3, 2026 credit reports showed the account with zero balance but also with consumer-dispute comments indicating unresolved dispute information.[43]

The Agencies argue she identifies inconsistencies in her various credit reports but again does not specify the inaccurate information she alleges the Agencies reported.[44] They also argue she pleads no facts suggesting the Agencies failed to reasonably reinvestigate the disputed accounts and, in any event, she cannot bring a reasonable reinvestigation claim because she does not specify the allegedly inaccurate information.[45]

Ms. Graves counters she "alleges inaccurate or materially misleading reporting, unreasonable procedures, injury, and causation."[46] She argues the Agencies' reporting "damaged her creditworthiness, depressed scores and risk factors, impaired access to favorable credit, increased financing costs, and required repeated expenditure of time and money."[47] She argues at the pleading stage, she simply "must plausibly connect the challenged reporting to cognizable harm, which she has done."[48]

Congress through section 1681e(b) requires a consumer reporting agency assure maximum possible accuracy in preparing a credit report.[49] To proceed into discovery on this theory, Ms. Graves must plead facts allowing us to plausibly infer: (1) her credit report included inaccurate information; (2) the inaccuracy resulted from the credit reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) she suffered injury; and (4) the inclusion of the inaccurate entry caused her injury.[50] Information is "inaccurate" under section 1681e(b) if it is incorrect or "misleading in such a way and to such an extent that it can be expected to have an adverse effect."[51] In determining whether information is misleading, we "view the information through the lens of a person in a position to make an adverse decision based on a credit report, i.e., a creditor."[52] We only reach the question of whether a credit reporting agency followed reasonable procedures if we first determine the challenged report contained inaccurate information.[53]

Our Court of Appeals guides consumers must clearly allege inaccuracies in credit reports.[54] In *Williams v. Experian Info. Sols., Inc.*, the consumer argued he pleaded facts stating a claim for Experian's failure to follow reasonable procedures under the Fair Credit Reporting Act.[55] Our Court of Appeals disagreed because the consumer "did not allege how or why [his account] information was inaccurate or how Experian should have reported it."[56] Ms. Graves' second amended Complaint suffers the same deficiency. Ms. Graves alleges inconsistencies in specific accounts on her credit reports; for example, accounts shown as charged off but with negative balance or past due amounts, accounts with zero balance amounts but indication of an unresolved dispute with the account, or different account statuses across the Agencies' various reports. She claims these inconsistencies demonstrate inaccuracies in the Agencies' reporting. But she does not allege why these inconsistencies are inaccurate. She does not allege which account balance or account status is accurate and which is inaccurate.

Our Court of Appeals in *Bibbs v. Trans Union LLC* offers further context on credit report accuracy.[57] Three consumers in *Bibbs* alleged Trans Union inaccurately issued credit reports with pay status notations indicating late payments on loans earlier closed.[58] Our Court of Appeals held the reports were accurate because one could reasonably interpret the past due pay status as "historical information" about the closed account.[59] Our Court of Appeals explained "just because a report could potentially be a bit clearer does not mean…it is not very clear at present."[60] This principle applies to Ms. Graves' second round of allegations. Perhaps the Agencies could have included further context in their credit reports. But we cannot plausibly infer the reports are inaccurate without further specificity from Ms. Graves as to why the "past due" status listed on closed or charged off accounts is inaccurate.

We are also persuaded by Judge Pratter's reasoning five years ago in *Holland v. Trans Union LLC* as to alleged inconsistencies in reported account status.[61] A consumer brought claims under the Fair Credit Reporting Act alleging Equifax and Trans Union inaccurately reported the pay status of his personal loan account as past due after he paid and closed the account.[62] He based the alleged inaccuracy on the Agencies' definition of "pay status" included in the glossaries of the Agencies' investigation reports.[63] Judge Pratter declined to find an inaccuracy.[64] She explained an investigation report "is not the same as a credit report seen by a potential user or creditor," meaning she did not consider the investigation report in evaluating the alleged inaccuracy through the lens of a creditor.[65] Judge Pratter found the credit report "not 'inaccurate' or 'misleading'" when viewing it "as a whole."[66] Ms. Graves identifies certain accounts she alleged she closed with past due status. But she alleges no inaccuracy in those accounts beyond inconsistency. She does not plead facts allowing us to plausibly infer a "past due" status is inaccurate.

We are mindful of guidance allowing claims to proceed when consumers sufficiently plead inaccuracy. In *Berkery v. Equifax Information Services LLC*, for example, a consumer alleged Equifax, Experian, and Trans Union falsely reported his closed credit card account as three months overdue when he had actually paid the account in full.[67] Judge Pratter denied the reporting agencies' motion to dismiss in part because his inaccuracy allegations met "the lenient standard of notice pleading" to survive a motion to dismiss.[68] Ms. Graves does not meet the standard. The consumer in *Berkery* pleaded he paid his account in full but reporting agencies produced factually inaccurate reports showing his account as three months overdue. Ms. Graves does not plead this type of fact after two attempts, including one attempt after we guided her on this issue. She comes closest in her allegations concerning her Discover Bank account, where she alleges inaccuracy "because the account was charged off but continued to communicate a full past-due amount and

repeated derogatory status in a way that created the impression of a continuing, currently aging delinquency after the charge-off."[69] She confirms the accuracy of certain information in the report – the account's reported "charged off" status – which is more than she does for her other accounts.[70] But she does not allege the other information concerning the Discover Bank account is inaccurate.[71] She once again alleges inconsistency, not inaccuracy.

Ms. Graves does not sufficiently plead facts allowing us to plausibly infer an inaccuracy in her credit reports. She cannot proceed on her claims under sections 1681e(b) or 1681i.

### B. Ms. Graves may not proceed on her reinvestigation and reinsertion claims absent an alleged inaccuracy.

Ms. Graves alleges the Agencies did not conduct reasonable reinvestigations after she disputed the information in her credit reports to determine whether the information was inaccurate, materially misleading, incomplete, or unverifiable.[72] She also alleges Trans Union continued reporting disputed information after receiving notice of her disputes and failed to provide the reinsertion notices and certifications required by the Fair Credit Reporting Act.[73] And she alleges information concerning her First Premier Bank account reappeared on subsequent credit reports after Experian confirmed the information deleted from her credit file.[74]

The Agencies argue Ms. Graves' reinvestigation claim cannot survive because she fails to allege an actionable inaccuracy.[75] Trans Union argues the reinsertion claim does not survive because Ms. Graves does not specify when she disputed and when Trans Union reinserted the relevant information.[76]

Ms. Graves counters she plausibly alleges the Agencies did not reasonably reinvestigate the disputes by "identif[ying] the reports and results by date and describ[ing] the account-level information at issue."[77] She argues the specific reinsertion steps Trans Union took "are the subject

of discovery" and not required at this stage.[78] She also argues she alleges specific accounts and the approximate dates of her inquiries to Trans Union.[79]

When a consumer disputes the accuracy of information in their credit reports, Congress requires reporting agencies conduct reasonable reinvestigation "to determine whether the disputed information is inaccurate."[80] But we do not need to consider the reasonableness of a credit reporting agency's reinvestigation unless the disputed information is inaccurate.[81] Ms. Graves continues to base her claims only on inconsistencies in her credit reports. Because Ms. Graves fails to plead facts allowing us to plausibly infer inaccurate information in the Agencies' reports, we do not need to consider the reasonableness of the Agencies' reinvestigation.

Congress also prohibits consumer reporting agencies from adding previously deleted information back into a credit report unless the person furnishing the information certifies the information is complete and accurate and the agency notifies the consumer no later than five days after the reinsertion.[82] The reinserted information must have been disputed by the consumer, deleted from the consumer's credit file through a section 1681i(a)(1) reinvestigation, and reinserted into the consumer's credit file without proper notice.[83]

Our sister District in New Jersey addresses the removal and reinsertion of information from a consumer's credit report.[84] Judge Vazquez in *Veloz v. Experian* found a consumer's reinsertion and failure to properly notify claims against a credit reporting agency lacked facts allowing Judge Vazquez to plausibly infer the agency deleted the information as part of a section 1681i reinvestigation.[85] The consumer failed to allege specifics as to the timing of his complaints, whether he submitted disputes directly to the credit reporting agency or indirectly through a reseller, the type of information he disputed, and his basis for disputing such information.[86]

Ms. Graves runs into similar problems. She alleges she disputed "multiple hard inquiries" for various accounts on her Trans Union consumer credit report, Trans Union removed the information from the report, and she then saw the same information on subsequent Trans Union Reports.[87] She provides account names and approximate dates for the disputed hard inquiries.[88] But she does not plead facts as to when Trans Union deleted the hard inquiries following a reinvestigation, when Trans Union later reinserted them, or how Trans Union failed to comply with Congress's certification or notice requirements. She also does not plead facts establishing her basis for disputing the reinserted hard inquiries. We cannot plausibly infer the hard inquiries were inaccurate from the facts Ms. Graves pleads. Her claim under section 1681i(a)(5)(B) is insufficient.

**C. Ms. Graves again does not allege negligent or willful noncompliance.**

Ms. Graves alleges the Agencies acted with willful and negligent noncompliance under sections 1681n and 1681o by "continuing to publish disputed information after [Ms. Graves] placed them on notice of specific inaccuracies and after investigation results showed deleted or disputed information."[89] She also alleges the Agencies failed to "provide reinsertion notices…correct open-account reporting after repossession…correct materially misleading chargeoff reporting…and reasonably investigate disputed account-level fields."[90]

The Agencies argue Ms. Graves does not plausibly allege they negligently violated sections 1681e(b) or 1681i.[91] They argue this deficiency also means Ms. Graves does not plausibly allege any willful violation.[92] They argue she does not plausibly allege willful noncompliance because she does not show the Agencies "acted knowingly to report inaccurate information regarding unidentified accounts" or "acted in reckless disregard for her rights."[93] They argue she does not plead a single "objectively reasonable" practice or policy of the Agencies.[94]

Ms. Graves counters she plausibly alleges facts allowing us to infer a plausible negligence claim: the Agencies' "failures to use reasonable procedures, conduct reasonable reinvestigations, correct or delete unverifiable information, and comply with reinsertion safeguards."[95] Ms. Graves also argues she plausibly alleges facts supporting an inference of willful noncompliance: "repeated disputes over several years, continued publication after direct notice, deletion reflected in Defendants' own investigation results, later reappearance, absence of statutory notice, and repeated verification of unresolved fields."[96]

Congress allows an individual to bring a private suit for damages against a consumer reporting agency negligently or willfully failing to comply with the specific duties it owes to consumers.[97] A consumer reporting agency may be liable for negligent noncompliance with the Act if: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry."[98] A consumer reporting agency willfully violates the Act if it knowingly violates the Act or acts with reckless disregard of its obligations to the consumer under the Act.[99] A consumer reporting agency acts with reckless disregard if its action violates the Act under a reasonable reading of the Act and shows the agency "ran a risk of violating the law [that was] substantially greater than the risk associated with a reading that was merely careless."[100] The consumer reporting agencies' actions must be objectively unreasonable when viewed against established legal rules to be considered reckless.[101]

We again look to our colleagues addressing willful and negligent noncompliance under the Fair Credit Reporting Act.[102] A consumer brought claims against Trans Union under the Act alleging Trans Union continued to maintain and furnish inaccurate credit information after the

parties settled an earlier lawsuit under the Act.[103] The consumer alleged Trans Union negligently and willfully failed to comply with its duties under the Act by failing to follow reasonable procedures to ensure maximum possible accuracy and by failing to conduct a reasonable reinvestigation of disputed information.[104] Judge Murphy earlier this year held the consumer did not plausibly allege negligent or willful noncompliance because she did not plead "any specific information respecting how Trans Union purportedly violated, or continues to violate" the Act.[105] He noted the consumer did not specify the alleged inaccuracies in her Trans Union credit report and did not provide "any specific examples of credit denials or other negative consequences tied to alleged misreporting from Trans Union — there is no information regarding what entities denied her credit or other related applications, when they did so, or for what reasons."[106]

Ms. Graves does not plausibly allege negligent or willful noncompliance for similar reasons. She does not plead facts allowing us to plausibly infer inaccurate information in the Agencies' reports. She thus has no viable claim for negligent or willful noncompliance against the Agencies. And while she broadly identifies damages she alleges the Agencies caused, she does not identify specific examples of harm tied to the Agencies' alleged misreporting or specific information about denied credit or other related applications.[107]

We are also guided by Judge Wolson's analysis last as to consumers' obligation to allege inaccuracy in the reported information at issue to proceed under 1681e(b) or 1681i.[108] In *Rivera v. TransUnion LLC*, a consumer alleged inaccurate information reappeared on her Trans Union credit report and hurt her ability to buy a home.[109] Judge Wolson dismissed the consumer's complaint finding she did not allege inaccurate information.[110] He noted a court need not consider the reasonableness of an agency's procedures under 1681e(b) or reinvestigation under 1681i unless the credit report at issue contains inaccurate information.[111]

Ms. Graves does not plead facts allowing us to plausibly infer inaccurate information in the Agencies' reports. She cannot proceed under 1681e(b) or 1681i and thus cannot allege negligent or willful noncompliance with the duties in those statutory provisions.

## III. Conclusion

Ms. Graves again does not sufficiently plead facts allowing us to plausibly infer the Agencies (1) prepared a report containing inaccurate information; (2) violated a duty to reinvestigate a dispute, where such reinvestigation would have resulted in the discovery of a discrepancy in her report; or (3) willfully or negligently violated specific duties owed to consumers under the Fair Credit Reporting Act. Ms. Graves also does not plead facts allowing us to plausibly infer Trans Union did not meet the reinsertion requirements of section 1681i. We grant the Agencies' Motion to dismiss with prejudice because Ms. Graves we afforded Ms. Graves an opportunity to amend after studying our earlier dismissal. She could not correct the deficiencies.

---

[1] ECF 28 ¶ 15.

[2] *Id.* A three-bureau report contains credit reports and FICO scores from the three main credit bureaus in the United States: Experian, Equifax, and Trans Union. *3-bureau credit report and FICO® Scores*, https://www.experian.com/credit/experian-equifax-transunion-credit-report-and-score/ [https://perma.cc/R5EN-ECV8].

[3] ECF 28 ¶ 16.

[4] *Id.* ¶ 17. A tradeline is a term used by credit reporting agencies to describe credit accounts listed on a creditor's credit report. Each credit card, loan, or other type of credit account has its own tradeline. A tradeline usually includes the following information: lender name and address, type of account, partial account number, current status, date account opened, date account closed (if applicable), date of last activity, current balance, original loan or credit limit, monthly payment, recent balance (for credit card accounts), and payment history. *What Are Tradelines and How Do They Affect You?*, https://www.experian.com/blogs/ask-experian/what-are-tradelines/ [https://perma.cc/STP2-TFGB].

[5] ECF 28 ¶¶ 18, 39, 46, 51, 58, 63, 69, 74, 80, 85, 90, 95, 100.

[6] *Id.* ¶¶ 18, 26, 32.

---

[7] ECF 22.

[8] ECF 26.

[9] ECF 28.

[10] *Id.* ¶¶ 1, 124–35.

[11] *Id.* ¶¶ 1, 143–51.

[12] *Id.* ¶¶ 1, 136–142.

[13] *Id.* ¶¶ 28–34.

[14] *Id.* ¶ 7.

[15] *Id.* at 22.

[16] 15 U.S.C. § 1681a(f) ("The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.")

[17] 15 U.S.C. § 1681a(d).

[18] *See* 15 U.S.C. § 1681b (outlining permissible purposes of consumer reports).

[19] 15. U.S.C. § 1681.

[20] *Id.*

[21] ECF 30.

[22] ECF 30-1 at 8–19.

[23] ECF 31 at 2.

[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "'Plausibly' does not mean 'probably,' but 'it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (quoting *Iqbal*, 556 U.S. at 678). A pleading offering "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further

factual enhancement'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

[25] *Oakwood Lab'ys LLC*, 999 F.3d at 904 (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)) (cleaned up).

[26] *Freeman v. Lincalis*, 158 F.4th 166, 175 (3d Cir. 2025) (quoting *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024)).

[27] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

[28] *Id.* (quoting *Mala*, 704 F.3d at 245).

[29] *Freeman*, 158 F.4th at 175 (quoting *Mala*, 704 F.3d at 245).

[30] ECF 28 ¶¶ 35–102.

[31] *Id.* ¶¶ 35–39.

[32] *Id.* ¶¶ 44–46.

[33] *Id.* ¶¶ 50–51.

[34] *Id.* ¶¶ 56–58.

[35] *Id.* ¶¶ 62–63.

[36] *Id.* ¶¶ 68–69.

[37] *Id.* ¶¶ 73–74.

[38] *Id.* ¶¶ 78–80.

[39] *Id.* ¶ 83.

[40] *Id.* ¶ 84.

[41] *Id.* ¶¶ 88–90.

[42] *Id.* ¶¶ 94–95.

[43] *Id.* ¶¶ 99–100.

[44] ECF 30-1 at 8–16.

---

[45] *Id.*

[46] ECF 31 at 11.

[47] *Id.*

[48] ECF 31 at 12.

[49] Congress, in pertinent part under 15 U.S.C. § 1681e(b), mandates: "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

[50] *Bibbs v. Trans Union, LLC*, 43 F.4th 331, 342 (3d Cir. 2022) (citing *Cortez*, 617 F.3d at 708).

[51] *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014).

[52] *Bibbs v. Trans Union, LLC*, 521 F. Supp. 3d 569, 574 (E.D. Pa. 2021), *aff'd* 43 F.4th 331 (3d Cir. 2022).

[53] *Angino v. Trans Union, LLC*, 784 F. App'x 67, 69 (3d Cir. 2019); *Holland v. Trans Union LLC*, 574 F. Supp. 3d 292, 300 n.4 (E.D. Pa. 2021).

[54] *Williams v. Experian Info. Sols., Inc.*, No. 23-3167, 2024 WL 3439776 (3d Cir. July 17, 2024).

[55] *Id.* at *1.

[56] *Id.*

[57] *Bibbs*, 43 F.4th at 331.

[58] *Id.* at 337.

[59] *Id.* at 344.

[60] *Id.*

[61] *Holland v. Trans Union LLC*, 574 F. Supp. 3d 292 (E.D. Pa. 2021).
[62] *Id.* at 295.

[63] *Id.* at 296.

[64] *Id.* at 299.

[65] *Id.*

[66] *Id.*

[67] *Berkery v. Equifax Information Services LLC*, 429 F. Supp. 3d 24 (E.D. Pa. 2019).

[68] *Id.* at 32.

[69] ECF 28 ¶ 46.

[70] *Id.*

[71] *Id.*

[72] *Id.* ¶¶ 35–102.

[73] *Id.* ¶¶ 21–27.

[74] *Id.* ¶¶ 28–34.

[75] ECF 30-1 at 8–16.

[76] *Id.* at 18–19.

[77] ECF 31 at 12.

[78] ECF 31 at 12–13.

[79] *Id.* at 13–14.

[80] 15 U.S.C. § 1681i(a)(1)(A).

[81] *Bibbs*, 543 F.4th at 344–45; *Schweitzer v. Equifax Information Solutions LLC*, 441 F. App'x 896, 909 n.9 (3d Cir. 2011) (dismissing section 1681i claims in which plaintiffs failed to allege…their credit report contained inaccuracy because "without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail" (citation and internal quotation marks omitted)); *Angino*, 784 F. App'x at 69.

[82] Congress, in pertinent part under 15 U.S.C. § 1681i(a)(5)(B), provides: "If any information is deleted from a consumer's file . . . the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate. . . . If any information that has been deleted from a consumer's file . . . is reinserted in the file, the consumer reporting agency shall notify the consumer of the reinsertion . . ."

[83] 15 U.S.C. ¶¶ 1681i(a)(1), 1681i(a)(5)(B).

[84] *Veloz v. Experian Info. Sols., Inc.*, No. 23-271, 2023 WL 2649483 (D.N.J. Mar.27, 2023).

[85] *Id.* at *3.

[86] *Id.*

[87] ECF 28 ¶¶ 21–24.

[88] *Id.* ¶¶ 27.

[89] *Id.* ¶ 144.

[90] *Id.* ¶ 145.

[91] ECF 30-1 at 18.

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] ECF 31 at 19.

[96] *Id.*

[97] Congress under 15 U.S.C. § 1681n addresses civil liability for willful noncompliance, in pertinent part, as "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer." Congress under 15 U.S.C. § 1681o address civil liability for negligent noncompliance, in pertinent part, as "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable."

[98] *Bibbs*, 43 F.4th at 342.

[99] *Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012).

[100] *Id.* at 248–49.

[101] *Id.* at 249.

[102] *Lyle v. Trans Union*, No. 25-2647, 2026 WL 1471203 (E.D. Pa. May 26, 2026).

[103] *Id.* at *1.

[104] *Id.*

[105] *Id.* at *5.

---

[106] *Id.*

[107] ECF 28 ¶¶ 116–23.

[108] *Rivera v. TransUnion LLC*, No. 24-333, 2025 WL 77077 (E.D. Pa. Jan. 10, 2025).

[109] *Id.* at *1.

[110] *Id.* at *3.

[111] *Id.* at *2.